Argued and submitted April 29, affirmed September 28, 1994

Agnes WEBB;
Wayne Webb; Carol Webb;
Delores Rhodig; Delbert Lee Webb;
Etta Marie Webb; and Miles Lane Webb,
*Appellants,*

*v.*

LaVelle UNDERHILL,
*Respondent,*

*and*

FEDERAL LAND BANK OF SPOKANE;
and John Doe,
*Defendants.*

(91-4954-C; CA A77449)

882 P2d 127

W. Theodore Guthrie argued the cause and filed the briefs for appellants.

Jeffrey B. Wilkinson argued the cause for respondent. With him on the brief was Stafford Frey Cooper & Stewart.

Before Rossman, Presiding Judge, and Edmonds* and De Muniz, Judges.

ROSSMAN, P. J.

___

* Edmonds, J., *vice* Leeson, J.

## ROSSMAN, P. J.

In this action to partition real property, ORS 105.205, plaintiffs appeal from a summary judgment for defendant. We hold that the determinative issue in the case, whether the alternative beneficiaries' remainder interests are contingent or vested, is a question of law that is amenable to resolution on summary judgment, and that the trial court correctly held that those interests are contingent. Accordingly, we affirm.

Ernest Webb, owner of the Buck Hollow Ranch, died in 1972. His will devises all of his property to his wife Agnes for life, or until she remarries, with the remainder of the property to be divided equally among four of Ernest's six children upon Agnes' death or remarriage. If any one of the four named children is deceased at that time, that one-quarter share will go to his or her lineal descendants, if any. Specifically, the will provides:

"For her use, benefit and enjoyment, for such period of her natural life as she shall remain unmarried, I give to my beloved wife, Agnes Webb, all of my property of every kind and nature, with the provision, however, that if my said wife shall remarry, that said property shall *at the date of the marriage* revert as follows: One Dollar ($1.00) each to Irene Barton and to Vivian Morse [two of Ernest's six children]. The remainder shall be divided equally between [the other four children]:

"Delbert Webb
"Delores Rhodig
"La Velle Underhill
"Wayne L. Webb

"But if one or more of these shall be dead, their share shall go to their lineal descendants, if any. If one or more of the four who live in Oregon and are last mentioned, shall be dead leaving no lineal descendants, the share of the deceased one, dead without lineal descendants, shall go to the survivors of the four who live in Oregon (last mentioned) or to their lineal descendants. The said four being Delbert Webb, Delores Rhodig, La Velle Underhill, and Wayne L. Webb.

"*At the death of my said wife*, if she shall yet be in the use and enjoyment of said property, such as remains shall be divided as follows: One Dollar ($1.00) each to Irene Barton

and to Vivian Morse. The remainder shall be divided equally between:

>"Delbert Webb
>"Delores Rhodig
>"La Velle Underhill
>"Wayne L. Webb

"But if one or more of these shall be dead, their share shall go to their lineal descendants, if any. If one or more of the four who live in Oregon and are last mentioned, shall be dead leaving no lineal descendants, the share of the deceased one, dead without lineal descendants, shall go to the survivors of the four who live in Oregon (last mentioned) or to their lineal descendants. The said four being Delbert Webb, Delores Rhodig, La Velle Underhill, and Wayne L. Webb." (Emphasis supplied.)

After Ernest's death, his son Delbert died. Delbert is survived by his wife Carol, who subleases a portion of the ranch, and their three adult children (the grandchildren).

Plaintiffs, who seek to sell the ranch as a single parcel and distribute the proceeds according to their respective interests, are Ernest's wife Agnes, two of Ernest's children (Wayne and Delores), Delbert's wife Carol and the grandchildren. Defendant is Ernest's daughter La Velle.

To maintain an action to partition property, a plaintiff must be a tenant in common, with a vested remainder in the property. ORS 105.205.[1] Agnes, as the sole life estate holder, is not a tenant in common, and Carol is a mere lessee. Therefore, neither of those parties fits within the requirements of the partition statute. Below, plaintiffs argued that the grandchildren's interests vested indefeasibly at the time of Delbert's death.[2] They conceded below that the children's

---

[1] ORS 105.205 provides:

"When several persons hold real property as tenants in common, in which one or more of them have an estate of inheritance, or for life or years, or when several persons hold as tenants in common a vested remainder or reversion in any real property, any one or more of them may maintain a suit for the partition of the real property according to the respective rights of the persons interested therein, and for a sale of all or a part of the property if it appears that a partition cannot be had without great prejudice to the owner." (Emphasis supplied.)

[2] Because of our holding that none of the plaintiffs has a vested remainder, it is unnecessary to address plaintiffs' argument that the term "vested remainder," as used in ORS 105.205, encompasses vested remainders subject to defeasement and vested remainders subject to open, as well as indefeasibly vested remainders. We

interests are contingent, but, on appeal, their reply brief may be viewed as an attempt to withdraw that concession. Defendant argued that all of the remainder interests are contingent, in that the children or their lineal descendants must survive Agnes' death or remarriage to take under the will.

The trial court ruled that both the children's and grandchildren's interests are contingent and conditioned upon surviving to the date of Agnes' death or remarriage. Having concluded that none of the plaintiffs holds a vested remainder, the court held that they could not maintain this partition action. ORS 105.205. Accordingly, it granted defendant's motion for summary judgment and dismissed the case.

The issues on appeal are whether the children's and grandchildren's interests in the property are vested, and whether resolution of that question involves a factual determination that precludes summary judgment. Plaintiffs' first argument is that the decision regarding whether the remainder interests in the property are vested or contingent is a mixed question of fact and law that cannot be decided by the court on a motion for summary judgment.[3] *See* ORCP 47C. They point out that the trial court characterized as issues of fact both the vested or contingent status of the remaindermen and the testator's intent regarding a requirement of survivorship for the grandchildren. They argue that, because those issues are material and disputed by the parties, defendant was not entitled to summary judgment.

We hold that, in this case, the question of whether the remainder interests are contingent or vested is a purely legal one.[4] Although the trial court erroneously segmented its

note, however, that according to the *Restatement of Property*, "Future Interests," ch 7, § 157, at 547 (1936), an indefeasibly vested remainder "is the only type of remainder which includes a power to compel partition."

[3] According to defendant, plaintiffs should be precluded from contending that there are disputed issues of fact, because they did not make that argument below and because plaintiffs themselves submitted the "Findings of Fact, Conclusions of Law" document that was signed by the judge below. However, the fact that the parties agreed that there are no disputed facts is not dispositive of our resolution of the propriety of a summary judgment on appeal. *Ducy v. Farmers Insurance Co.*, 90 Or App 195, 199, 751 P2d 803 (1988).

[4] A remainder is vested when it is limited to identifiable persons and will become possessory immediately upon the expiration of the preceding estate; a remainder is

decision into factual "findings" regarding the testator's intent and legal "conclusions" regarding plaintiffs' ability to maintain this partition action, the dispositive legal question to be resolved was and is what type of future interests are possessed by Ernest's four named children and their lineal descendants under the terms of his will. In the emphasized portions of the will, set out above, the testator expressly provides that the triggering event by which all distributions are determined is the death or remarriage of the life tenant. When the language of a will is unambiguous, there is no basis for resorting to extrinsic evidence to ascertain the testator's intent. *Scarlett v. Hopper*, 110 Or App 457, 460, 823 P2d 435 (1992).

■■   We turn to trial court's legal conclusions, beginning with an analysis of the future interests of Ernest's four named children. Plaintiffs acknowledge that the will contains a survivorship requirement that the children must meet, in order for them to personally take, but contend that the children's interests are most aptly described as "vested remainders subject to divestment" should they fail to survive the life tenant. That is incorrect. The devise in this case created *alternative* remainder interests in both the children and the grandchildren. *Love v. Lindstedt*, 76 Or 66, 147 P 935 (1915).[5] When a life estate is followed by two alternative remainder interests, and "the vesting of the second depends upon the failure of the first, and the same contingency decides which one of the two alternative remainders shall take effect in possession," both interests are alternative *contingent* remainders. 76 Or at 72. Here, surviving the death or remarriage of the life tenant is the contingency that

contingent when it will take effect " 'upon a dubious or uncertain event or to a dubious and uncertain person[.]' " *Williamson v. Denison and Groves*, 185 Or 249, 255, 202 P2d 477 (1949) (quoting *Jones v. Miller*, 283 Ill 348, 119 NE 324 (1918)); *see also Morse et al v. Paulson et al*, 182 Or 111, 116, 186 P2d 394 (1947) (son who was a possible beneficiary of the trust, but acquired no interest therein if he was not living at the time of the trust's termination, did not have a vested interest in the trust estate).

[5] There is support in the *Restatement* for plaintiffs' position that a remainder interest can be vested yet subject to a survivorship requirement, *i.e.*, a survivorship requirement does not necessarily mean that the remainder interest is contingent. However, *Love v. Lindstedt, supra*, supports the view that a devise "to A for life, remainder to B, but if B predeceases A, then to C" creates alternative remainder interests in B and C. Paulus, J., "Future Interests in Oregon," 15 Will L Rev 151, 159 (1979). Under the facts of this case, "B and C" would represent Ernest's named children and their lineal descendants.

decides whether and which of the alternative remainder interests will vest indefeasibly. If one of the children dies before the triggering event, his or her estate—and, accordingly, his or her spouse, if any—will take nothing under the will.[6] Until the triggering event takes place, it cannot be known who will be entitled to take under Ernest's will. *See Jerman v. Jerman*, 129 Or 402, 407, 275 P 915 (1929).

■ Plaintiffs contend that the only contingency that conditioned the present three grandchildren's interests was to survive their *father's* death. They argue that, once Delbert died, his interest in the property indefeasibly vested in his children. It is true that, if Delbert's lineal descendants were taking by devise or by intestate succession from Delbert, those heirs would be determined at the moment of his death. *Wright v. Kroeger*, 219 Or 102, 107, 345 P2d 809 (1959). However, the future interests of Delbert's children, if any, flow directly from their grandfather Ernest's will, not Delbert's. *Hawkins & Roberts v. Jerman*, 147 Or 657, 660-61, 35 P2d 248 (1934).[7] Their interests stem only from their membership in a class described as "lineal descendants." When a will includes a gift to a class of persons, the devise takes effect in favor of those who constitute the class at the death of the testator, unless the will shows a contrary intent. *Heilig v. Daniel et al*, 203 Or 123, 133, 275 P2d 854, 278 P2d 988 (1955); *Gerrish v. Hinman*, 8 Or 348, 350 (1880). As noted above, Ernest's will unambiguously expresses a contrary intent. It states that upon *Agnes'* remarriage or death, Ernest's property is to be divided among his four named children or their lineal descendants. That language fixed Agnes' death or remarriage as the date on which a determination of the members of the "lineal descendants" class is to be made.[8] There may or may not be any lineal descendants of

---

[6] This is to be distinguished from a vested remainder interest that, although subject to a life estate, will become possessory at the termination of that estate; in such cases, the remainderman's estate will be entitled to take even if the remainderman has died.

[7] In *Hawkins*, the grandson's potential future interests flowed from the will of his grandfather, not through any inheritance from his father, and the court held that such interest could not be ascertained until the death of the life tenant.

[8] The *Restatement (Second) of Property*, "Donative Transfers," § 28.2 (1988), states that when a gift is made to a class described as the "descendants" of a named person, or by another multigenerational term, "[a] class member must survive to the *date of distribution* in order to share in the gift." (Emphasis supplied.) Under Oregon

Delbert living at the date of Agnes' death or remarriage. If none are living, Delbert's share will be divided among his named siblings who live in Oregon or their lineal descendants.

Furthermore, before the life tenancy ends and the class closes, it will be impossible to determine the entire membership of the class of lineal descendants. Plaintiffs argue that once Delbert died, he could have no more lineal descendants and that, as a consequence, his portion of the class closed with Delbert's three children as its only members. That is incorrect. The term "lineal descendants" encompasses more than just children. The term includes all those who proceed from the body of the person named to the remotest degree, including grandchildren and great-grandchildren. *Pedro v. January*, 261 Or 582, 494 P2d 868 (1972).

In sum, until Agnes' death or remarriage, all of the future interests in this case will remain contingent. There is presently no party who may maintain a partition action.

Affirmed.

---

law, the "primary incidents of 'class gifts' * * * are survivorship and the admission of after-born members." *Jorgensen v. Pioneer Trust Co.*, 198 Or 579, 592, 258 P2d 140 (1953).